# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| MESCAL WIEGAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-11-TLS |
| | ) | |
| ACTING COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Mescal Wiegand, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff's application was denied initially and upon reconsideration. On August 17, 2015, an administrative law judge (ALJ) held a hearing on the Plaintiff's application. On September 15, 2015, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because she was not disabled under the relevant provisions of the Social Security Act. In November of 2016, the Appeals Council denied review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

## EVIDENCE OF RECORD

The Plaintiff was born on October 22, 1959. (R. at 71, ECF No. 10.) She has at least a high school education. (R. at 30.) The Plaintiff has a work history that includes working as a cafeteria manager at a high school, main cook, and a cafeteria manager. (R. at 31–37.)

In the present case, the Plaintiff claims to have become disabled on June 26, 2013, due to physical impairments, including congestive heart failure. (Pl. Br. 2, ECF No. 14.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, the Claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff had not engaged in SGA since the alleged onset of disability and thus, the Plaintiff satisfied the step one inquiry. (R. at 12.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairment of congestive heart failure was a severe impairment because it "caused more than [a] minimal limitation in the claimant's ability to perform basic work activities." (*Id.*) The ALJ did not find that the Plaintiff's diagnoses of hypertension, venous stasis[1], and back pain were severe. (*Id.*) Step three requires the ALJ to

---

[1] A condition in which the veins of the legs are not working effectively, making it difficult for the blood to return to the heart from the legs and increasing the risk of blood clots forming in the vein. The Cleveland Clinic, http://my.clevelandclinic.org/health/articles/chronic-venous-insufficiency (last visited Nov. 14, 2017.)

"consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, she earns a presumption of disability "without considering [her] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairment does not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to perform light work, as defined by § 404.1567(b). (R. at 12–13.) However, the ALJ held that the Plaintiff is limited to occasional climbing of ramps, stairs, ladders, ropes, and scaffolds, and the Plaintiff is limited occasional balancing, stooping, kneeling, crouching, and crawling. (R. at 13.) In arriving at the RFC, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, "however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . ." (R. at 14.)

The ALJ began by reviewing the medical records from the date of the Plaintiff's alleged disability onset in June of 2013. The ALJ noted that though the Plaintiff was hospitalized for a period of approximately 9 days, diagnosed with congestive heart failure, sought treatment for

difficulty breathing and swelling of the legs, and her ejection fraction was 20%,[2] the Plaintiff's arteries were normal and she had no chest pain. (R. at 13–14.) During her three week follow up from this period of hospitalization, the ALJ held that the medical record demonstrates that the Plaintiff's leg edema and shortness of breath improved and that she had no palpitations. (R. at 14.) In August of 2013, the ALJ noted that the Plaintiff was ambulatory for brief periods, an irregular gallop in the Plaintiff's heartbeat was no longer present, the Plaintiff's pulses in her extremities were diminished, but intact, and the Plaintiff reported feeling stronger every day— she climbed stairs twice per week, walked in the house and yard, and shopped. (*Id.*) The ALJ also noted that the Plaintiff has been attending cardiac rehabilitation since October of 2013, with no worsening of her condition (though the ALJ found that the cardiac rehabilitation medical records are difficult to read to determine the Plaintiff's progress). (*Id.*) Also in October 2013, the Plaintiff's ejection fraction improved to 50–55%, she reported fatigue but no shortness of breath, her peripheral pulses were normal, and the range of motion of her joints was normal. (R. at 15.) By October of 2013, the ALJ noted that the Plaintiff continued with routine treatment and did not experience any exacerbation of symptoms nor was she again hospitalized.

Finally, the ALJ recounted the Plaintiff's testimony regarding her limitations, pointing out that while the Plaintiff maintained she had limitations, she also was able to function and/or her impairments were controlled by medication and treatment. (*See* R. at 14 ("The claimant stated she did not have difficulty walking but did no lifting or bending . . . . [S]he did not have problems dressing, but had trouble showering and lifting her hands above her head.").) Ultimately, the ALJ found that:

---

[2] Ejection fraction is the measurement of the percentage of blood leaving the heart every time it contracts. An ejection fraction of 55% or higher is considered normal. MayoClinic, https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286 (last visited Nov. 14, 2017).

> The claimant's testimony regarding her limitations between June 2013 and December 2013 are not supported by the medical evidence of record, as demonstrated by improvement in the ejection fraction and her ability to perform daily activities. The claimant was able to sit, stand, and ambulate in October 2013 with no worsening of her condition noted during the period under consideration. The claimant has not required emergency room visits or hospitalization because of congestive heart failure and has only had routine treatment on a regular basis.

(*Id.*) Moreover, the ALJ held that the "physical examination and objective tests fail[ed] to corroborate the claimant's testimony of debilitating functional limitations." (*Id.*)

Accordingly, the ALJ gave partial weight to Wound Care physician Dr. Robert Jackson and Registered Nurse Carolyn Smith, who saw the claimant five times between July 2013 and August 2013 for venous stasis of her lower legs and open wounds on her legs, because by August of 2013, the Plaintiff's wounds had healed. Moreover, the Plaintiff was able to sit, stand, and ambulate, her venous stasis was under control, and the Wound Care Center did not assess her ability to lift, carry, or handle objects. (*Id.*) The Plaintiff did not return to the Wound Care Center after August of 2013, and the ALJ did not otherwise find in the Record "evidence to suggest continued limits of leg elevation and no prolonged sitting or standing." (*Id.*)

The ALJ gave great weight to the State Agency's assessment that the Plaintiff could have performed light work with occasional postural limitations, "because it is consistent with the record as a whole." (*Id.*)

At the final step of the evaluation, the ALJ determined that the Plaintiff cannot perform any past relevant work. (*Id.*) However, because of the Plaintiff's age, education, work experience, and RFC, the ALJ found that there are a significant number of jobs in the national economy that the Plaintiff could perform. (R. at 16.) These jobs include a cleaner, inspector/hand packager, and office helper. (*Id.*).

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Richardson*, 402 U.S. at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529

F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

On appeal to this Court, the Plaintiff presents the following faults with the ALJ's decision: (1) the ALJ's credibility determination was in error because he disregarded the Plaintiff's fatigue and limits to bending and instead focused solely on the Plaintiff's ejection fraction; (2) the ALJ erred by giving greater weight to the state agency doctors over the Plaintiff's treating physician; and (3) the ALJ did not ask the vocational expert about the Plaintiff's limitations.

**A.    The Plaintiff's Credibility**

The Plaintiff finds fault with the ALJ's analysis of the Plaintiff's credibility because the Plaintiff asserts that the ALJ did not consider her subjective complaints. "The ALJ listed [the] Plaintiff's subjective complaints in a perfunctory manner and then proceeded to discredit those complaints merely because the Plaintiff's ejection [fraction] had improved." (Pl. Br. 4–5, ECF No. 14.) The Plaintiff contends that the ALJ did not consider her ongoing difficulties with fatigue, dizziness, and limitations regarding ambulation when determining if the Plaintiff continued to have physical limitations. "The determination is not whether or not [the] Plaintiff's condition worsened, but rather what her physical limitations were at that point in time." (*Id.* at 5.)

The Court finds that the ALJ did not solely rely upon the Plaintiff's improved ejection fraction when evaluating the Plaintiff's credibility. The ALJ explained that from the Plaintiff's initial hospitalization in July 2013, the Plaintiff's condition generally improved because the medical records state that she was able to sit, stand, and ambulate, (R. at 342, 321, 322), the gallop in her heartbeat had resolved, (R. at 321, 322), her range of function was normal in all joints, and there was no edema of the extremities. (R. at 391.)

Nevertheless, the Court finds that the ALJ did not analyze the Plaintiff's subjective complaints of fatigue, dizziness, and limitations to bending, including whether the ALJ found these complaints to be credible in light of the medical record. *See Miller v. Massanari*, 181 F. Supp. 2d 978, 983 (N.D. Ind. 2002) ("In this case, what is not apparent from the ALJ's decision is to what extent [the plaintiff's] subjective complaints of fatigue was believable or unbelievable and how the fatigue impacted or did not impact [the plaintiff's] residual functional capacity."). The Plaintiff argues that the medical record contains numerous references to the Plaintiff's fatigue as a functional limitation. Though the ALJ is not required to address every piece of evidence or testimony presented, "[o]ur cases consistently recognize that meaningful appellate review requires the ALJ to articulate reasons for accepting or rejecting entire lines of evidence." *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). Here, the ALJ did not indicate whether the Plaintiff's complaint of fatigue is inconsistent with the medical records. For example, it could be that though the Plaintiff's condition improved, her fatigue is of such a degree so as to become a limitation on her functional ability. Or, as the *Miller* court held:

> It may be that her fatigue was not so severe as to limit her from continuing to perform her past work. However, that would be mere guess work by this court. The ALJ is obligated to discuss these subjective complaints on some minimal level so as to give this court an indication that these factors were considered. This court is simply unable to determine whether that was or was not done based upon a close examination of the ALJ's opinion.

*Id.* at 984 (citation omitted). Because the ALJ "does not address how the fatigue did or did not affect her ability to continue to perform her past employment as it was previously performed," this Court finds the ALJ's decision to be in error. *Miller*, 181 F. Supp. 2d at 984. Accordingly, the Court remands on this issue.

**B.     The Plaintiff's Treating Source**

The ALJ gave partial weight to the October 2013 medical record from the Wound Clinic, (R. at 342), because "the claimant was able to sit, stand, and ambulate." (R. at 15.) The Plaintiff argues the ALJ did not account for the restriction included in the following sentence of the Wound Clinic's records, which recommends "no prolonged sitting or standing and to elevate her legs 2-3 times a day to promote venous return," (R. at 342). The Plaintiff also argues that the state agency doctors failed to consider these restrictions.

Upon review of the ALJ's decision, the Court notes that the ALJ did reference these restrictions; however, he concluded that these restrictions did not appear to be ongoing: "there is no evidence to suggest continued limits of leg elevation and no prolonged sitting or standing" after the Plaintiff was discharged from the Wound Center, and her other medical records show an "increased ability to perform daily activities." (R. at 15.) In essence, the ALJ determined that the restrictions included in the Wound Center's medical record expired upon the Plaintiff's discharge from the Wound Center, especially because the Plaintiff was better able to perform daily activities.

The Court finds that there is not an "accurate and logical bridge" between the ALJ's evaluation of the Wound Clinic's medical record and his evaluation of the Plaintiff's restrictions. *Craft*, 539 F.3d at 677–78. Simply because a patient is discharged does not mean that the patient

no longer has recommended limitations. Here, it appears that the Plaintiff was discharged with orders to engage in a course of treatment—elevating her legs multiple times a day and refraining from prolonged sitting or standing. The ALJ did not appear to evaluate what effect, if any, these limitations have on the Plaintiff's RFC. The Court remands on this issue.

The Court declines to review the Plaintiff's arguments concerning the vocational expert. Because of the ALJ's errors with the RFC determination, a new RFC determination must be made. Therefore, the challenge to the vocational expert's testimony conducted under the current RFC finding is moot.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion.

SO ORDERED on November 16, 2017.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT